1
2
3
4
5
6
7
8
9
10

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TANYA ROSENBERG, an individual, on behalf of herself, and all persons similarly situated<br><br>                    Plaintiff,<br><br>          v.<br><br>RENAL ADVANTAGE, INC., a Delaware Corporation; and DOES 1 through 50, inclusive,<br><br>          Defendants. | Civil Action No. 11-cv-2152-GPC-KSC<br><br>**ORDER**<br>**(1) DENYING MOTION FOR**<br>**CLASS CERTIFICATION**<br>**(2) DENYING MOTION TO**<br>**STRIKE**<br><br>[ECF NO.42, 48] |

Before the Court is a motion for class certification filed by Plaintiff Tanya Rosenberg ("Plaintiff"). (ECF No. 42.)  Also before the Court is Defendant Renal Advantage's ("Defendant" or "Renal Advantage") motion to strike the declaration of Valerie Berkowtiz. (ECF No. 48.)  For the reasons stated below, the Court **DENIES** Plaintiff's motion for class certification and **DENIES** Defendant's motion to strike.

## I. Procedural History

On September 15, 2011, Defendant removed the civil action from state court.  (ECF No. 1.)  On November 15, 2011, Plaintiff filed an amended class action complaint. (ECF No. 14, "FAC".)  On October 12, 2012, the case was transferred to the undersigned judge. (ECF No. 41.)  On November 2, 2012, Plaintiff filed a motion to certify the class.  (ECF No. 42, "Pl. Mtn").  Defendants filed an opposition to Plaintiff's motion and moved to strike the declaration of Valerie Berkowitz.  (ECF Nos. 46, 48, "Def. Opp.".)  Plaintiff filed a reply to Defendant's opposition, and also opposed Defendant's request to strike. (ECF Nos. 52, 53.)  On May 31, 2013, the Court held a hearing on the pending motions.

## II. Background

Plaintiff Tanya Rosenberg brings this class action complaint against her former employer Defendant Renal Advantage, Inc. on behalf of Registered Dieticians ("RDs") who were employed by the Defendant.  Plaintiff was employed by Renal Advantage as a Registered Dietician from October 2004 through September 2010.[1]  Plaintiff seeks certification under the theory that RDs are categorically misclassified as exempt from overtime, meal/rest break and wage statement requirements under California law.

---

[1] There is a factual dispute as to the reason Plaintiff ended her employment with Defendant Renal Advantage.

1                                                            **Civil Action No. 11-cv-2152-GPC-KSC**

Defendant Renal Advantage is a provider of outpatient dialysis services and operates approximately 45-50 renal dialysis centers, commonly referred to as "Care Centers," throughout the state of California. (Pl. Mtn, "Statement of Facts" at 5-6). The Care Centers perform in-center hemo-dialysis and other related services to patients with stage 5 chronic kidney disease. (Id.) The Care Centers are organized into interdisciplinary teams which consist of an attending physician, registered nurse, registered dietitian, and social worker. (Id.) Defendant typically provides one team per Care Center. (Id.)

A. **FAC Allegations**[2]

The FAC contains the following five causes of action: (1) unfair competition in violation of Cal. Bus. & Prof. Code §§ 17200 *et seq.*, (2) failure to pay overtime compensation in violation of Cal. Labor Code §§ 510, 1194 and 1198, (3) failure to provide accurate itemized wage statements in violation of Cal. Labor Code § 226, (4) failure to pay overtime compensation in violation of 29 U.S.C. § 201, *et seq.*, and (5) violation of the Private Attorneys General Act as provided under Cal. Labor Code § 2698 *et seq.* Plaintiff seeks class certification as to the first three state law based causes of action.

Plaintiff alleges the RD job duties are outside the scope of the professional, administrative, or executive exemptions as provided by California law. Plaintiff claims the RD tasks were primarily day-to-day non-exempt production activities, and Defendant improperly misclassified all RDs as "exempt" and "salaried" employees.

Plaintiff describes the RDs as part of a broader production team of other medical professionals. The RDs utilize a defined skill set to review, plan and develop patient diets and offer patients education on nutrition and dietetics.

---

[2] ECF No. 14, Plaintiff's First Amended Complaint.

2                                                              **Civil Action No. 11-cv-2152-GPC-KSC**

Plaintiff alleges RDs do not provide "traditional" direct medical services to patients, render opinions or make any medical diagnosis.  Rather, the RDs plan and develop patient diets in accordance with the orders given by the attending physician and RDs advice is subject to the physician's limitations.

The RDs allegedly worked eight to nine hours each workday or between two to five hours in overtime each week. Plaintiff claims as a result of the misclassification she and all other RDs were wrongfully denied overtime compensation, meal breaks and rest periods in violation of California labor laws, California Unfair Competition Law, and the Fair Labor Standards Act.  Plaintiff also alleges RDs were not provided accurate itemized wage statements.

### B.    Registered Dieticians' Job Qualifications and Responsibilities

According to the Plaintiff's job description, Renal Advantage requires all Registered Dietitians possess specific qualifications. (Pl. Mtn, Ex. 7.)   The RD must have a bachelor degree in Nutrition/Dietetics, must be a registered dietitian with the American Dietetic Association, and licensed in the practice of nutrition and dietetics. (Id.)  The job also requires minimum experience of two years in clinical dietetics and/or nutrition, renal nutrition preferred, and specific oral, written, and technical communication skills. (Id.)  The RDs "provide[] education and counseling to the ESRD patient and their families to support and maximize the nutritional functioning of the patient.  At all times, the Registered Dietician should perform all job responsibilities in alignment with the mission and core values of Renal Advantage, Inc. and comply will all [company] policies and procedures" and other applicable state and federal laws.

The job description provided to RDs by Renal Advantage identifies seven essential job responsibilities for the Registered Dietitians, which are broken down by percentage of time spent on each task. (Id.)  The essential responsibilities are: (1) to provide nutrition education and counseling based on individualized patient

3                                                    **Civil Action No. 11-cv-2152-GPC-KSC**

dietary needs; and develop educational resources for patients including but not limited to written materials, lobby displays, games, etc. (25%); (2) to monitor nutritional status, laboratory values, dialysis kinetics, adherence and response to dietary and/or nutrition therapy; evaluate outcomes and make modifications; participate in care center process; and document appropriate information in medical record (25%); (3) to assess nutritional status of patients and develop short and long term treatment goals (20%); (4) to develop an individual dietary plan for each patient (15%); (5) to participate in monthly interdisciplinary care plan meetings (5%); (6) to be responsible for osteodystrophy management; review data and recommend changes to therapy as indicated (5%); (7) to order and distribute enteral supplements, vitamins and phosphorous binders for Medicaid (5%); and (8) to perform other duties as assigned.  (Id.)  It is undisputed that all full-time Registered Dietitians were classified as exempt employees under the professional exemption.

**III. Legal Discussion**

    **A.    Motion to Strike**

        Federal Rule of Evidence 702 requires that a testifying expert be "qualified as an expert by knowledge, skill, experience, training, or education." Fed.R.Evid. 702.  When faced with a proffer of expert testimony, a district court must determine whether the testimony is both reliable and relevant. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993)("Daubert I"). The court has broad discretion in assessing both requirements. See United States v. Alatorre, 222 F.3d 1098, 1100 (9th Cir.2000). The reliability requirement ensures "that an expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999). To satisfy the relevance requirement, the proffered expert

**Civil Action No. 11-cv-2152-GPC-KSC**

testimony must assist the trier of fact in understanding or determining a fact in issue. <u>Daubert I</u>, 509 U.S. at 591.

Defendant moves to strike the expert statement of Valerie Berkowitz. (Dkt. No. 48.)  Defendant argues the Berkowitz declaration is deficient because it was not signed under penalty of perjury, and therefore fails to comport with 28 U.S. § 1746 and Local Civ. R. 1-1(e)(7). (<u>Id.</u> at 2.)  Defendant further argues the Berkowitz statement is unreliable as it is based on personal, anecdotal experience and also irrelevant to any issue bearing on Plaintiff's motion. (<u>Id.</u> at 3.)  Plaintiff contends Ms. Berkowtiz's opinions are reliable, relevant, and fully comply with Fed. R. Civ. P. 26(a)(2)(B). (Dkt. No. 52.)

The Court finds Ms. Berkowitz is sufficiently qualified to provide expert testimony.  Under Ninth Circuit law, an expert may be qualified through either practical training or academic experience. <u>See</u> <u>Rogers v. Raymark Indus.</u>, Inc., 922 F.2d 1426, 1429 (9th Cir.1991).  Moreover, the threshold for qualification is low: a minimal foundation of knowledge, skill, and experience suffices. <u>Hangarter v. Provident Life & Accident Ins. Co.</u>, 373 F.3d 998, 1015–16 (9th Cir.2004); <u>see also</u> <u>Thomas v. Newton International Enterprises</u>, 42 F.3d 1266, 1269 (9th Cir.1994).  Defendant argues Ms. Berkowitz only has experience as a non-renal dietitian, which makes her unqualified.  The Court disagrees.  Ms. Berkowitz has several degrees in the relevant field, and she has worked as a registered dietitian for over 25 years. (Pl. Mtn., Ex. 3, Berkowitz Decl. at 2.)  Based on this experience and credentials, Ms. Berkowiz satisfies the qualifications requirement.

Ms. Berkowitz testimony is sufficiently reliable and relevant.  "When evaluating specialized or technical expert opinion testimony, 'the relevant reliability concerns may focus on personal knowledge or experience.'" <u>U.S. v. Sandoval-Mendoza</u>, 472 F.3d 645, 655 (9th Cir. 2006)(citing <u>Khumho Tire Co.</u>, 526 U.S. at 150).  "Because medical expert opinion testimony 'is based on

5                                                      **Civil Action No. 11-cv-2152-GPC-KSC**

specialized as distinguished from scientific knowledge, the <u>Daubert</u> factors are not intended to be exhaustive or unduly restrictive.'" <u>Id.</u> (quoting <u>Sullivan v. U.S. Department of the Navy</u>, 365 F.3d 827, 833-34 (9th Cir. 2004)).

Here, Ms. Berkowitz reviewed relevant testimony and declarations and Renal Advantage policies which resulted in an opinion that the RDs act more like vocational employees.  (Berkowitz Decl. at 2.)  The fact that Ms. Berkowitz may rely on her own personal experience, rather than on the nuances of the Renal Advantage procedures, does not ultimately render her opinion unreliable. Moreover, Ms. Berkowitz statement appears to be a reasonable opinion that speaks directly to the threshold issue regarding the RDs job classification as exempt employees.  As such, the opinion is also relevant to the class action proceedings.

The fact that Ms. Berkowitz did not sign her statement under penalty of perjury does not render the opinion inadmissible.  As Plaintiff points out, the declaration complies with each requirement under Fed. R. Civ. P. 26(a)(2) for expert testimony.

For these reasons, the Court finds the expert opinion of Ms. Berkowitz is admissible.  Accordingly, the Court **DENIES** Defendant's motion to strike the declaration of Ms. Berkowitz.

### B.    Motion for Class Certification

Plaintiff bases her motion for class certification on Rule 23(a) and Rule 23(b)(3).

### 1.  Rule 23 Requirements

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of individual named parties only.  In order to justify a departure from that rule, a class representative must be a part of the class and possess the same interest and suffer the same injury as the class members." <u>Wal-</u>

6                                                      **Civil Action No. 11-cv-2152-GPC-KSC**

Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541, 2550, (2011) (quoting Califano v. Yamasaki, 442 U.S. 682, 700–01 (1979). To fit within the exception, "a party seeking to maintain a class action 'must affirmatively demonstrate his compliance' with [Federal Rule of Civil Procedure] 23.' " Comcast Corp. v. Behrend, 133 S.Ct. 1426, 1432 (2013) (quoting Dukes, 131 S.Ct. at 2551–52).

Rule 23 contains two sets of requirements. First, "[r]ule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate. The Rule's four requirements—numerosity, commonality, typicality, and adequate representation—effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." Dukes, 131 S.Ct. at 2550 (internal quotation marks and citations omitted).  Second, "[w]here a putative class satisfies all four requirements of 23(a), it still must meet at least one of the three additional requirements outlined in 23(b)." United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union AFL–CIO, CLC v. ConocoPhillips Co., 593 F.3d 802, 806 (9th Cir.2010).  Here, Plaintiff relies on Rule 23(b)(3). (Pl. Mtn at 13.)

Rule 23(b)(3) provides:

> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and the likely difficulties in managing a class action.
> Fed. R. Civ. P. 23(b)(3).

When considering class certification under Rule 23, "'sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question,' and that certification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" Dukes, 131 S.Ct. at 2551(quoting General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 160 (1982)). That is because "class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" Ibid. "The same analytical principles govern Rule 23(b). And if anything, Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)." Comcast, 133 S.Ct. at 1432 (citing Amchem Products, Inc. v. Windsor, 521 U.S. 591 (1997)). Against these principles of law, the Court examines Plaintiff's showing on each of the requisite prongs.

### a. Numerosity

Rule 23(a)(1) requires that "the class [be] so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The numerosity requirement does not impose set limits, but requires courts to examine the specific facts of each case. Gen. Tel. Co. of the Northwest, Inc. v. Equal Employment Opportunity Commission., 446 U.S. 318 (1980).

In the motion to certify the class, Plaintiff identified 87 putative class members that Defendant admitted to employing as Registered Dietitians. (Pl. Mtn at 14.) Defendant argues there are only 62 putative class members because certain RDs were part-time employees or paid hourly. (Def. Opp. at 7.) Defendant asserts 25 RDs are non-exempt, non-salaried employees and therefore should not be considered part of the putative class. (Id.) Defendant further argues that 62 putative class members is too small for the class, and joinder is not impracticable. (Id.) Plaintiff does not object to the proposed 62 putative members, and contends

1   that the class is sufficiently large to make joinder impracticable. (Pl. Reply at 1.)

2       The Court agrees with Plaintiff.  In an employment law class action, current

3   employees are generally less willing to sue their employer individually out of fear

4   of retaliation.  <u>Romero v. Producers Dairy Foods, Inc.</u> 235 F.R.D. 474, 485 (E.D.

5   Cal. 2006)(internal citation omitted).  Moreover, Courts have found that a class

6   size over forty generally satisfies the numerosity requirement.  <u>Id.</u>  For these

7   reasons, the Court finds Plaintiff has satisfied the numerosity requirement.

8   **b. Commonality**

9       Rule 23(a)(2) requires Plaintiff to demonstrate that "there are questions of

10  law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To show commonality,

11  class members must have "suffered the same injury." <u>Dukes</u>, 131 S. Ct. at 2551

12  (quoting <u>Falcon</u>, 457 U.S. at 157).  Therefore, the claims depend upon a common

13  contention "of such a nature that it is capable of classwide resolution – which

14  means that determination of its truth or falsity will resolve an issue that is central

15  to the validity of each one of the claims in one stroke."  <u>Id.</u>  Moreover, the

16  classwide proceeding must "generate common answers apt to drive the resolution

17  of the litigation."  <u>Id.</u>   "Dissimilarities within the proposed class are what have

18  the potential to impede the generation of common answers."  <u>Id.</u>

19      The core dispute in this case is whether the RDs were misclassified as

20  exempt employees under the California Professional Exemption.  This exemption

21  applies to an employee (a) who is licensed or certified by the State of California

22  and is primarily engaged in the practice of one of the recognized professions

23  [including] medicine; (b) who is primarily engaged in an occupation commonly

24  recognized as a learned or artistic profession; (c) who regularly exercises

25  discretion and independent judgment in the performance of exempt duties; and (d)

26  earns a monthly salary equivalent to no less than two times the state minimum

27  wage for full-time employment. 8 Cal. Code Regs. §§ 11040 at §1(A)(3)(a)-(d).

28  9                                    **Civil Action No. 11-cv-2152-GPC-KSC**

To be engaged in a learned or artistic profession, an employee must primarily engage in "[w]ork requiring knowledge of an advanced type in a field or science or learning customarily acquired by a prolonged course of specialized intellectual institution and study" and work that "is predominantly intellectual and varied in character (as opposed to routine mental, manual, mechanical or physical work). Id. at §1(A)(3)(b)(i, iii).

The parties agree on two of the four professional exemption requirements. The parties do not dispute RDs employed by Defendant are licensed by the State of California and RDs were compensated on a salary basis at two times the statutory minimum. (Pl. Mtn at 19; Ex. 16, Def. Resp. to Interrogatories No.8.) The parties vigorously disagree as to whether RDs are part of a "learned" profession according to the statute and whether the RDs exercised independent judgment. The varied evidence regarding these two requirements is significant.

Plaintiff bases her showing that RDs were misclassified on state law which regulates the practice of Registered Dietitians and Defendant's "uniform policies and systematic practices." (Pl. Mtn at 11,15.) First, Plaintiff relies on California Bus. & Prof. Code § 2586, which provides, in pertinent part, a registered dietitian:

> (a) [M]ay, *upon referral by a health care provider* authorized to prescribe dietary treatments, provide nutritional and dietary counseling, conduct nutritional and dietary assessments, and *develop nutritional and dietary treatments,* including therapeutic diets, for individuals or groups of patients in licensed institutional facilities or in private office settings.  The referral shall be accompanied by a written prescription signed by the health care provider detailing the patient's diagnosis and *including a statement of the desired objectives of dietary treatment*, unless a referring physician or surgeon has established or approved a written protocol governing the patient's treatment. . .
> (b) [M]ay accept or transmit verbal orders or electronically transmitted orders from the referring physician *consistent with an established protocol* to implement medical nutrition therapy…

**Civil Action No. 11-cv-2152-GPC-KSC**

(c) [M]ay order medical laboratory tests related to nutritional therapeutic treatments *when authorized to do so by a written protocol prepared or approved by the referring physician* and when, in the absence of the referring physician at a patient visit, in a clinic where there is a registered nurse on duty, a registered nurse is notified that a medical laboratory test is being ordered and is afforded an opportunity to assess the patient. Cal. Bus. & Prof. Code § 2586 (West)(emphasis added)

Pursuant to this law, Plaintiff asserts RDs may only provide nutritional advice in accordance with a physician's referral, authorization or approval. As such, RDs are constrained from exercising independent judgment or discretion outside these legal parameters. Plaintiff points to Defendants policies that prohibit RDs from "accepting, writing transcribing or altering patient medication orders…Registered Dietitians may enter diet orders in the patient's electronic medical record **per physician orders**." (Pl. Mtn. at 11.) Given the central role of the physician, Plaintiff argues RDs lack autonomy and Defendants as a matter of law cannot prove the RDs exercised independent judgment.

However, Plaintiff ignores the language of § 2586 which authorizes RDs to "develop nutritional and dietary treatments" that will meet the "desired objectives" of the referring health care provider. Section 2586 does not, as a matter of law, limit the autonomy of RD's or prevent the exercise of independent judgment. As such, § 2586 fails to provide sufficient proof to resolve the question whether RDs exercise independent judgment.

Plaintiff also relies upon the RD job description, testimony by proposed class representative Tanya Rosenberg and declarations by select RDs who are current or former employees of Defendant Renal Advantage. The RD job description, stated in full above, outlines seven broad essential responsibilities of the RDs. The RD declarations provide a few salient common allegations: the RDs worked between 45-50 hours per week; RDs were classified as exempt employees and did not receive overtime wages; RDs followed standardized procedures to

**Civil Action No. 11-cv-2152-GPC-KSC**

perform their job duties; RDs had limited ability to advise patients without orders by the attending physician; RDs wage statements included only days, not hours, worked.  (Pl. Mtn, Exs. 5-8, Decls. of Colucci, Griffin, Sotto, and Koo.)  Plaintiff asserts this evidence further supports the conclusion that attending physicians made all final decisions regarding patient care and RDs were relegated to menial tasks that did not require independent judgment.  As such, Plaintiff asserts she can show through common evidence that the RDs were misclassified as exempt employees.

Defendant argues there is insufficient common evidence to show on a classwide basis the RDs were misclassified as exempt.  Defendant relies on testimony that shows RDs have different job duties across the Care Clinics, and each RD carries out their job differently depending on their own experience, the needs of the Care Center, and the needs of the patient. (Def. Opp. at 4, 14.)  As such, the determination of the threshold issue would require individualized inquiries.  For example, Defendants contend some RDs have testified the job description accurately reflects the time spent on required tasks.  (Def. Opp., Ex. 42-6 (Griffin Decl.); Ex. 42-8 (Koo Decl.); Ex. 42-7 (Soto Decl.).)  Other RDs have testified that their duties deviated from the job description.  (Def. Opp., Ex. 46-5 (Pontillo Decl.).)  Defendant also points out the varying level of discretion used by the RDs.  Some RDs stated they performed their duties in accordance with the orders given by the physician, while others directly advised patients without consulting the attending physician, veered away from Renal Advantage policies to craft their own diet plans and dosage protocols, and often times did not require physician approval for diet orders. (Def. Opp. at 15-16.)

The Court finds there is insufficient commonality to satisfy the threshold issue of the professional exemption.  This inquiry must be resolved by examining the actual work performed by the employees.  Aburto v. Verizon California Inc.,

No. CV-11-03683, 2012 WL 10381 at *4 (C.D.CA2012)(individualized inquiries as to application of exemption required notwithstanding alleged centralized policy which required all class members to perform the same job duties). First, the record shows differing evidence as to how the RDs actually spent their time on the job. Defendant points out variations in how the RDs performed their duties, managed their tasks, and number of hours the RDs worked to fulfill their duties. Plaintiff's reliance on the RD job description plus a few generalized sworn statements does not generate common answers that would drive the resolution of this this threshold issue. See Walsh v. IKON Office Solutions, Inc., 148 Cal. App. 4th 1440, 1458 (2007)(concluding the trial court had discretion to find commonality lacking to prove the exemption when the record suggested there was a dispute over how the employee actually spends his or her time); Marlo v. United Parcel Service, Inc., 639 F.3d 942, 948 (9th Cir.2011) (blanket exemption policy does not eliminate the need to make a factual determination as to whether class members are actually performing similar duties). The RD job description alone lists seven categories of "essential job responsibilities." Those responsibilities are described broadly, including several functions that appear to require some use of judgment and skills, including "provide nutrition education," "counsel[sic]…patient dietary needs," "monitor nutritional status," "develop individual dietary plan," "evaluate outcomes and make modifications." (Pl. Mtn, Ex. 7.) As such, the job description does not provide the necessary proof to show the RDs did or did not use independent judgment or that the occupation is a learned profession – two elements under the professional exemption.

Plaintiffs have failed to identify any other form of common proof to establish that the RDs have been misclassified under the professional exemption. Ultimately, dissimilarities regarding how the RDs perform their job duties prevent a showing that common questions and answers drive the resolution of the

**Civil Action No. 11-cv-2152-GPC-KSC**

litigation on this threshold issue.   As such, the Plaintiff have failed to satisfy Rule 23(a)(2).

### c. Typicality

The Court must determine whether "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir.1998).  "[T]he commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Dukes, 131 S.Ct. at 2551 n. 5.

Here, Plaintiff's claim and the class claims lack sufficient interrelation. Plaintiff and putative class members are all current or former Registered Dietitians employed by Defendant Renal Advantage.  The typicality of the claims stop there. The variation among the RDs tasks and job performance in addition to hours worked among RDs tends to show each claim is atypical.  The focus of the proposed class is to determine whether the RDs were properly classified as exempt employees, and if not, then if they were denied benefits under California law.  Given that the putative class members do not have similar experiences, Plaintiff has failed to satisfy the typicality prong.

### d. Adequacy

The final hurdle interposed by Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). "To determine whether the representation meets this standard, we ask two

**Civil Action No. 11-cv-2152-GPC-KSC**

questions: (1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" <u>Staton v. Boeing Co.</u>, 327 F.3d 938, 957 (9th Cir. 2003)(internal citation omitted).

Defendant argues Plaintiff lacks standing to claim injunctive relief and lacks standing to pursue claims not disclosed to her bankruptcy trustee.  (Def. Opp. at 8.)  Plaintiff responds that she has adequate standing to bring a claim for injunctive relief because a former employee may bring this claim under California labor law.  Plaintiff further asserts her bankruptcy proceeding was discharged on July 9, 2009, and she did not file her claim until one year after the discharge.  (Pl. Reply at 7-8.)

### i. Injunctive Relief

As part of her claim for violation of the Unfair Competition Law ("UCL"), Plaintiff seeks declaratory and injunctive relief restraining Defendant from "engaging in any unlawful and unfair business practices in the future." (FAC ¶ 61.)

Defendants argue Plaintiff lacks standing to bring a claim for injunctive relief because she is a former employee, and therefore cannot show she would benefit from any injunctive relief.  Defendant relies on a Ninth Circuit decision in which a former employee did not have standing to claim injunctive relief under Title I of the American Disabilities Act. <u>Walsh v. Nev. Dep't of Human Res.</u>, 471 F.3d 1033 (9th Cir. 2006).   In <u>Walsh</u>, the Plaintiff sought injunctive relief to require the defendant to adopt and enforce lawful policies regarding discrimination based on disability.  <u>Id.</u> at 1034.  The Ninth Circuit held Plaintiff lacked standing because as a former employee, who did not seek to be reinstated by her employer, "she would not stand to benefit from an injunction requiring the anti-discriminatory policies she requests at her former place of work." <u>Id.</u> at 1037.

1    Plaintiff argues that under Cal. Bus. & Prof. Code §17203, she may assert a

2 claim for injunctive relief. Plaintiff relies on <u>Herr v. Nestle U.S.A., Inc</u>., 109 Cal.

3 App. 4th 779 (2003), in which the Court found Plaintiff had standing to bring a

4 claim of injunctive relief under the UCL when an employer had engaged in an

5 unlawful practice of discriminating against older employees.  The Court held the

6 employee had a statutory right to enjoin employer from engaging in such

7 discrimination. <u>Id.</u>

8    The Court finds Plaintiff may bring a claim for equitable relief under the

9 UCL.  In <u>Cortez v. Purolator Air Filtration Products Co</u>, Plaintiff, a former

10 employee, filed an action on behalf of herself and the general public for

11 Defendant's failure to pay overtime wages as a violation of the UCL. 23 Cal. 4th

12 163, 169 (2000).  In addition to restitution of unpaid wages, Plaintiff sought

13 injunctive relief in the form of an order requiring defendant to give notice to

14 persons to whom defendant owed restitution the means by which they could file

15 for restitution.  <u>Id.</u>  The Supreme Court held unlawfully withheld overtime wages

16 may be recovered as restitution in a UCL action, and granted the trial court broad

17 discretion in fashioning relief.   Section 17203 "does not mandate restitutionary or

18 injunctive relief when an unfair business practice has been shown.  Rather, it

19 provides that the court 'may make such orders or judgments as may be necessary

20 to prevent the use or employment of any practice that constitutes unfair

21 competition or to restore money or property.' That is a grant of broad equitable

22 power.'" <u>Id.</u> at 180(citing Cal. Bus. & Prof. Code § 17203).

23    Here, Plaintiff seeks declaratory and injunctive relief under the UCL due to

24 Defendant's alleged wrongful denial of overtime wages.  Depending on the

25 outcome of the litigation, the Court at this time refrains from limiting the ability to

26 craft equitable remedies under the UCL that would address the alleged unfair

27 business practice of Defendants.

28

16                                        **Civil Action No. 11-cv-2152-GPC-KSC**

### ii. Bankruptcy Proceeding

Due to the pending bankruptcy proceeding, Plaintiff has failed to show that she is an adequate class representative.  Legal claims that accrued before the filing of the bankruptcy petition are property that becomes part of the bankruptcy estate. Seneca v. First Franklin Fin. Corp., 2011 WL 3235647 (S.D. Cal. July 28, 2011)(internal citations omitted).  "Where a claim asserted in a lawsuit is the property of the bankruptcy estate, the Chapter 7 trustee is the real party in interest under the Bankruptcy Code and is the proper party to the suit." (Id.)  The Seventh Circuit has addressed the adequacy of a bankruptcy trustee to serve as a class representative. see Dechert v. Cadle Co., 333 F.3d 801, 803 (7th Cir. 2003)(vacating class certification because the bankruptcy trustee had multiple conflicts of interest).  Although there is no rule that a bankruptcy trustee cannot serve as a class representative, Courts must be able to weigh any fundamental conflicts of interest to determine whether or not the trustee is an adequate representative.  (Id.)   Notably, any potential difference in the amount of recovery "does not, in itself, create a conflict of interest."  Hunt v. Check Recovery Systems, Inc., 241 F.R.D. 505 (N.D. Cal. 2007).

Plaintiff filed Chapter 7 bankruptcy on March 31, 2009 and the claim was discharged on July 7, 2009.  (Def. Opp. at 8; see also Request for Judicial Notice, In re Jorge Escobedo and Tanya Lynette Rosenberg, No. 09-04149-JM (Bankr. S.D. Cal. March 31, 2009); In re Jorge Escobedo and Tanya Lynette Rosenberg No. 09-04149-JM7 (Bankr. S.D.Cal. July 7, 2009)).  Defendant argues Plaintiff failed to list her litigation claims in the bankruptcy proceeding and the claims are therefore property of the bankruptcy trustee.  Due to this failure, Defendant argues Plaintiff lacks adequate standing to bring the class action claim. (Def. Opp. at 8-9.)  Plaintiff responds she became aware of the litigation claims only after the bankruptcy proceeding had been discharged, and argues she has standing to

**Civil Action No. 11-cv-2152-GPC-KSC**

pursue each claim from the date the bankruptcy was discharged in 2009 until she left Renal Advantage in September 2010.  (Pl. Reply at 8.)  Plaintiff argues she will recover for her claims only from the date of discharge in 2009, and the only difference between her and the putative class members is the amount Plaintiff may be able to recover in damages. (Id.)

Plaintiff cites Jordan v. Paul Financial, LLC, 285 F.R.D. 435 (N.D. Cal. 2010), for the proposition that the bankruptcy proceedings will not bear directly on the litigation. (Pl. Reply at 8 no. 8.) Yet in Jordan, the plaintiffs/debtors filed amended schedules with the bankruptcy court reflecting their interest in the class action litigation. 285 F.R.D. at *444.  Moreover, the plaintiffs/debtors entered into a stipulation with the bankruptcy trustee, which authorized them to prosecute, on behalf of the debtor's estate, the claims as pleaded in the class action case. Id.

Here, the Court does not have assurances as in Jordan to show Plaintiff has standing to bring the present action and adequately represent the class.  Claims that are not properly scheduled remain property of the bankruptcy estate, even after the court discharges the debt. Seneca, 2011 WL 3235647 (citing 11 U.S.C. § 554(d)).  Plaintiff has not properly amended the schedules with the bankruptcy court, nor has Plaintiff sought a stipulation with the bankruptcy trustee to bring the instant action.  In addition, Plaintiff's FAC alleges a proposed class period beginning in 2007, and as such, Plaintiff would not represent the class for the entire proposed class period.  Given these deficiencies, the Court is unable to determine whether Plaintiff or the bankruptcy trustee, as the real party in interest, has any conflict of interest in the present action and as a further matter adequately represents the class.  As such, the Court finds Plaintiff has failed to meet the adequacy requirement.

## 2. Rule 23(b)(3)

To satisfy Rule 23(b)(3), "common questions must 'predominate over any questions affecting only individual members," and class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy.'" <u>Hanlon</u>, 150 F. 3d at 1022; Fed. R. Civ. P. 23(b)(3).   To show predominance and superiority for overtime claims due to the alleged misclassification of the RDs as exempt employees, Plaintiff must "present substantial evidence proving both the existence of [Defendant's] uniform policies and practices *and* the alleged illegal effects of [Defendant's] conduct could be accomplished efficiently and manageably within a class setting." <u>Dailey v. Sears</u>, 214 Cal. App. 4th 974, 989 (2013)(citing <u>Sotelo v. Medianews Group, Inc.</u>, 207 Cal. App. 4th 639, 654 (2012) ("A class . . . may establish liability by proving a *uniform* policy or practice by the employer that *has the effect on the group* of making it likely that group members will work overtime hours without overtime pay, or to miss rest/meal breaks."(italics added))

### a. Untimely filing of Expert Declaration

On April 5, 2013, Plaintiff filed a 97-page "Notice of Supplemental Authority and Response to Defendants' Notices of Supplemental Authorities." (Dkt. No. 57.)  In the Memorandum of Points and Authorities, Plaintiff points the Court to several class action cases, including the Supreme Court decisions in <u>Amgen, Inc. v. Connecticut Retirement Plans</u>, 133 S. Ct. 1184 (2013), and <u>Comcast Corp. v. Behrend</u>, 133 S.Ct. 1426 (2013).  Unrelated to the supplemental notice, Plaintiff also attaches a declaration by Wesley L. Nutten, Certified Public Accountant ("CPA"). (Dkt. No. 57-1; "Nutten Decl".)  The declaration offers proposed damages methodology for classwide claims of unpaid overtime wages and denial of meal breaks and rest periods. (<u>Id.</u>)

Defendant objects to the filing of the declaration as untimely and prejudicial. (Dkt. No. 59.)  Defendants argue the declaration was submitted over four months following Plaintiff's response briefing in violation of the Court-ordered briefing schedule and only two weeks prior to the original hearing date. (Id. at 2.)  Due to the late filing, Defendant was denied the opportunity to fully evaluate and oppose the proposed methodology. (Id.)

The Court agrees with Defendant.  Plaintiff never sought leave to amend the motion for class certification, nor sought leave for an enlargement of time to file additional expert testimony.  The Court frowns upon Plaintiff's filing of critical expert testimony, essential to the Court's review of class certification, under the guise of a "Notice of Supplemental Authority."  The expert testimony has little relevance to the case law provided in the Notice, despite the reference to the Comcast decision.  As the Defendant did not have an opportunity to oppose Mr. Nutten's declaration and submit counter evidence, the Court is not able to fully and properly evaluate the methodology.  The Court will not consider the Nutten declaration for purposes of the pending motion.

### b. Predominance Analysis

Ultimately, Plaintiff's inability to show common proof of hours worked on a classwide basis prevents Plaintiff from establishing liability for claims of unpaid overtime wages and denial of meal breaks.  To show Defendant's liability as to unpaid overtime wages, Plaintiffs must show the RDs worked overtime hours. Cal. Lab. Code § 510 (West)("Any work in *excess of eight hours* in one workday and any work in *excess of 40 hours* in any one workweek . . . shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee.")(italics added).  To prove liability as to denial of meal breaks, Plaintiff must show the RDs worked more than five hours on any day and Defendant denied them a meal break. Cal. Lab. Code § 512 (West)("An employer

may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes."). There is no common proof of hours worked for all the RDs without resorting to individualized inquiries.  As such, the Court finds that common questions fact as to hours worked do not predominate.  The Court would have to resort to a series of mini-trials to determine hours worked for each class member.  Accordingly, class action is not the superior method to fairly and efficiently adjudicate these claims, and Plaintiff has failed to satisfy Rule 23(b)(3).

**IV. CONCLUSION**

Plaintiff failed to meet each requirement of Rule 23(a) and also failed to show predominance and superiority required by Rule 23(b)(3).  For these reasons, the Court hereby **DENIES** Plaintiff's motion to certify the class. (Dkt. No. 42.) The Court further **DENIES** Defendant's motion to strike the declaration of Valerie Berkowitz.(Dkt. No. 48.)

**IT IS SO ORDERED.**

DATE: June 24, 2013

Honorable Gonzalo P. Curiel