1   **BLUMENTHAL, NORDREHAUG & BHOWMIK**
      Norman B. Blumenthal (State Bar #068687)
2     Kyle R. Nordrehaug (State Bar #205975)
      Aparajit Bhowmik (State Bar #248066)
3     Piya Mukherjee (State Bar #274217)
    2255 Calle Clara
4   La Jolla, CA 92037
    Telephone: (858) 551-1223
5   Facsimile: (858) 551-1232
    Website: www.bamlawca.com
6
    Attorneys for Plaintiff
7

8

9

10

11                **UNITED STATES DISTRICT COURT**

12                **SOUTHERN DISTRICT OF CALIFORNIA**

13

14   TANYA ROSENBERG, an              **11-cv-02152-GPC-KSC**
     individual, on behalf of herself, and
15   all persons similarly situated,   **PLAINTIFF'S NOTICE OF APPEAL
                                        TO THE UNITED STATES COURT
16           Plaintiff,                OF APPEALS FOR THE NINTH
                                        CIRCUIT**
17      vs.

18   RENAL ADVANTAGE, INC., a
     Delaware Corporation; and DOES 1
19   through 50, inclusive,            Judge:        Hon. Gonzalo P. Curiel

20           Defendant.

21                                     Action Filed: August 15, 2011

22

23

24

25

26

27

28

PLAINTIFF'S NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS FOR
THE NINTH CIRCUIT

1         Plaintiff Tanya Rosenberg hereby appeals to the United States Court of

2    Appeals for the Ninth Circuit from the final judgment entered in this action by the

3    District Court for the Central District of California on April 24, 2014 [Doc. No. 87]

4    and all interlocutory orders that gave rise to that judgment, including but not limited

5    to the Order dated June 24, 2913 [Doc. No. 66].  A true and correct copy of the final

6    order granting judgment in favor of Defendant, dismissing the entire action on the

7    merits and ordered the entry of judgment in favor of Defendant dated April 24, 2014

8    as Docket No. 87 is attached hereto as Exhibit #1.

9         Plaintiff/Appellant is not aware of any related cases that are currently pending

10   in this Court.  Attached hereto as Exhibit #2 is a Representation Statement for

11   Plaintiff/Appellant Tanya Rosenberg.

12

13   Dated: May 14, 2014         BLUMENTHAL, NORDREHAUG & BHOWMIK

14

15             By:  /s/ Norman B. Blumenthal

16               Norman B. Blumenthal, Esq.
            2255 Calle Clara

17               La Jolla, CA 92037
            (858) 551-1223

18               Fax: (858) 551-1232
            Email: Norm@bamlawca.com

19               Attorney for Plaintiff / Appellant

20

21   K:\D\Dropbox\Pending Litigation\Renal Advantage - Rosenberg\Appeal\p-notice of Appeal - FINAL.wpd

22

23

24

25

26

27

28

PLAINTIFF'S NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS FOR
THE NINTH CIRCUIT

## CERTIFICATE OF SERVICE [F.R.C.P. §5]

I am a citizen of the United States and a resident of the State of California.  I am employed in the County of San Diego, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 2255 Calle Clara, La Jolla, California 92037.  On May 14, 2014, I served the document(s) described as below in the manner set forth below:

(1)    PLAINTIFF'S NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

_XX_    (BY ELECTRONIC SERVICE): I caused the listed documents to be electronically filed through the CM/ECF system at the United States District Court for the Southern District of California which generates a Notice of Electronic Filing to all parties and constitutes service of the electronically filed documents on all parties for purposes of the Federal Rules of Civil Procedure.

_XX_    (Federal): I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made, and that the foregoing is true and correct under penalty of perjury.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed on May 14, 2014 at San Diego, California.

_____/s/ Norman B. Blumenthal_____
Norman B. Blumenthal

---

**EXHIBIT #1**

1
2
3
4
5
6            **UNITED STATES DISTRICT COURT**
7            **SOUTHERN DISTRICT OF CALIFORNIA**

8    TANYA ROSENBERG, an individual,        CASE NO. 11cv2152-GPC(KSC)
     on behalf of herself, and all persons
9    similarly situated,                    **ORDER GRANTING
                                            DEFENDANT'S MOTION FOR
10                           Plaintiff,      SUMMARY JUDGMENT**

11         vs.                              [Dkt. No. 70.]

12   RENAL ADVANTAGE, INC., a
     Delaware Corporation; and DOES 1
13   through 50, inclusive,

14                         Defendants.

15
16         Plaintiff Tanya Rosenberg ("Plaintiff") brings this putative class and collective
17   action against Defendant Renal Advantage, Inc. ("Defendant" or "RAI") for denial of
18   overtime wages under federal and state wage and hour laws. (Dkt. No. 14 ¶ 1.)
19   Presently before the Court is Defendant's motion for summary judgment on all causes
20   of action asserted in Plaintiff's First Amended Complaint. (Dkt. No. 70.) The parties
21   have fully briefed the motion, (Dkt. Nos. 75, 78), and Plaintiff has filed an additional
22   notice of supplemental authority. (Dkt. No. 79.)  The Court finds the matter suitable for
23   resolution without oral argument pursuant to Local Civil Rule 7.1(d)(1). Based on a
24   review of the briefs, supporting evidence, and the applicable law, the Court GRANTS
25   Defendant RAI's motion for summary judgment.

26                         **PROCEDURAL BACKGROUND**
27         On August 13, 2011, Plaintiff filed the present action before the County of San
28   Diego Superior Court. (Dkt. No. 1-1.) On September 15, 2011, Defendant removed the

1  action to federal court.  (Dkt. No. 1.)  On November 15, 2011, Plaintiff filed a First

2  Amended Class and Collective Action Complaint, the current operative complaint.

3  (Dkt. No. 14.) On October 12, 2012, the case was transferred to the undersigned Judge.

4  (Dkt. No. 41.)  On November 2, 2012, Plaintiff filed a motion to certify the class.  (Dkt.

5  No. 42).   On June 24, 2013, this Court denied Plaintiff's motion to certify a class

6  pursuant to Federal Rules of Civil Procedure 23. (Dkt. No. 66.) Defendant now moves

7  for summary judgment on all causes of action asserted against RAI in the First

8  Amended Complaint. (Dkt. No. 70.) In addition, Defendant has filed a related request

9  for judicial notice. (Dkt. No. 70-3.)

10  **FACTUAL BACKGROUND**

11       Renal Advantage Inc. operates approximately 50 clinics across the state of

12  California, "providing dialysis services to patients with end-stage renal (kidney)

13  disease." (Dkt. No. 70-4, Palmer Decl. ¶ 4.) Specifically, RAI clinics offer the

14  following services: (1) in-center hemodialysis; (2) training and support for home

15  peritoneal dialysis and home hemodialysis; (3) initial and ongoing patient education

16  regarding the management and treatment options for end-stage renal disease; and

17  (4) social services and dietary evaluation and counseling. (Id. ¶ 4.) It is undisputed

18  that most RAI dialysis patients have other underlying diseases in addition to end-

19  stage renal disease, such as diabetes, hypertension, cardiovascular disease, and

20  anemia; RAI clinics thus utilize "interdisciplinary teams" to meet patient needs

21  consisting of a registered nurse, a physician, a social worker, and a registered

22  dietitian. (Id. ¶ 5; see also Dkt. No. 75-2 at ¶ 4.)

23       Plaintiff Tanya Rosenberg was employed by Defendant RAI as a Registered

24  Dietitian from October 2005[1] to September 2010 at the El Cajon and Mission Gorge

25

26       [1]The Court notes that Plaintiff's First Amended Complaint alleges that she was
employed by RAI beginning in October 2004. (Dkt. No. 14, FAC ¶ 3.) As discussed
27  below, Plaintiff appears to limit her claims to the period between July 9, 2009 and
September 3, 2010. (See Dkt. No. 75 at 23.) As such, this factual discrepancy is
28  immaterial.

1  RAI clinics in California. (Dkt. No. 70-4, Palmer Decl. ¶ 20.) It is undisputed that at

2  all times between August 2007 and September 2010, Plaintiff's salary exceeded

3  $455 per week and was at least two times the California minimum wage for full-

4  time employment per month. (Id.)

5       Plaintiff brings this action on behalf of herself and on behalf of a proposed

6  class of employees made up of "all persons who were employed by Defendant Renal

7  Advantage Inc. as a 'Registered Dietitian' in California (collectively, the

8  'Dietitians'), at any time during the CLASS PERIOD." (Dkt. No. 14, FAC ¶ 2.)

9  Plaintiff alleges she and other RAI Registered Dietitians were misclassified as

10  "exempt" from federal and state wage and hour laws and were thus improperly

11  denied overtime compensation, itemized wage statements, and other benefits. (Id. ¶¶

12  15-16.)

13  **I.     RAI Dietitian Qualifications**

14       According to an RAI job description signed by Plaintiff on October 14,

15  2008,[2] RAI requires all Registered Dietitians employed by the company to possess

16  specific educational and experiential qualifications. (Dkt. No. 70-5, Stern Decl. Ex.

17  E.) In particular, RAI's Registered Dietitians must have: (1) a Bachelors degree in

18  Nutrition/Dietetics; (2) Registered Dietitian status with the American Dietetic

19  Association; (3) a license in the practice of nutrition and dietetics if required by the

20  state; and (4) a minimum of one year of experience in clinical dietetics as a

21  Registered Dietitian. (Id.)

22

23

24

---

[2]Defendant has lodged two "Registered Dietitian" job descriptions with the Court, with the respective revision dates of May 24, 2006 and October 14, 2008. (Dkt. No. 70-5, Stern Decl. Exs. D, E.) Plaintiff's testimony indicates that she believed "the essential responsibilities listed in the job description were accurate when [she] signed the [more recently revised job description]" on October 14, 2008, and the parties have introduced no evidence indicating that Plaintiff's job duties changed between October 14, 2008 and the period at issue. (Id. Ex. A at 197.) Accordingly, the Court hereinafter refers only to the job description with the revision date of October 14, 2008, lodged with the Court as Exhibit E to the Declaration of David H. Stern in support of Defendant's Motion for Summary Judgment. (Id. Ex. E.)

1    Plaintiff testified that she met each of these requirements: that she obtained a

2   major in food and nutrition at San Diego State University; is a Registered Dietitian

3   with the American Dietetic Association; and worked for the American Red Cross as

4   providing nutrition counseling for over two years. (Dkt. No. 70-5, Stern Decl. Ex. A

5   at 38-43.) Plaintiff further testified that, to become a Registered Dietitian, she

6   completed an internship in dietetics after obtaining her Bachelors degree and passed

7   one exam that took "a few hours" to administer. (Id. at 40-41.) Plaintiff testified to

8   completing seventy five units of continuing education classes every five years to

9   maintain her Registered Dietitian status. (Id. at 41.)

10   **II.    Dietitian Job Responsibilities**

11    The RAI Registered Dietitian job description signed by Plaintiff identifies

12   seven essential job responsibilities broken down by percentage of time spent on

13   each task. (Dkt. No. 70-5, Stern Decl. Ex. E.) The essential responsibilities are as

14   described:  (1) Provides nutrition education and counseling based on individualized

15   patient dietary needs, including the development of educational resources for

16   patients (25%); (2) Monitors nutritional status, laboratory values, dialysis kinetics,

17   adherence and response to dietary and/or nutrition therapy; evaluates outcomes and

18   make modifications; participates in care center process; and documents appropriate

19   information in medical record (25%); (3) Assesses nutritional status of patients and

20   completes a comprehensive assessment, ongoing monitoring note and treatment

21   plan (20%); (4) Develops an individual dietary plan for each patient (15%); (5)

22   Participates in monthly interdisciplinary treatment plan meetings (5%); (6)

23   Responsible for mineral metabolism management; review data and recommend

24   changes to therapy as indicated (5%); (7) Orders and distributes enteral

25   supplements, vitamins and phosphorous binders for Medicaid (where allowed by

26   state regulations) (5%); and (8) to perform other duties as assigned.  (Id.)  It is

27   undisputed that all full-time RAI Registered Dietitians were classified by RAI as

28

[11cv2152-GPC(KSC)]

1   exempt employees under the professional exemption of federal and state wage and
2   hour laws.

3   **DISCUSSION**

4   **I.     Legal Standard**

5       Federal Rule of Civil Procedure 56 empowers the Court to enter summary
6   judgment on factually unsupported claims or defenses, and thereby "secure the just,
7   speedy and inexpensive determination of every action." <u>Celotex Corp. v. Catrett</u>,
8   477 U.S. 317, 325, 327 (1986). Summary judgment is appropriate if the "pleadings,
9   depositions, answers to interrogatories, and admissions on file, together with the
10  affidavits, if any, show that there is no genuine issue as to any material fact and that
11  the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A
12  fact is material when it affects the outcome of the case. <u>Anderson v. Liberty Lobby,</u>
13  <u>Inc.</u>, 477 U.S. 242, 248 (1986).

14      The moving party bears the initial burden of demonstrating the absence of
15  any genuine issues of material fact. <u>Celotex Corp.</u>, 477 U.S. at 323. The moving
16  party can satisfy this burden by demonstrating that the nonmoving party failed to
17  make a showing sufficient to establish an element of his or her claim on which that
18  party will bear the burden of proof at trial. <u>Id.</u> at 322-23. If the moving party fails to
19  bear the initial burden, summary judgment must be denied and the court need not
20  consider the nonmoving party's evidence. <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S.
21  144, 159-60 (1970).

22      Once the moving party has satisfied this burden, the nonmoving party cannot
23  rest on the mere allegations or denials of his pleading, but must "go beyond the
24  pleadings and by her own affidavits, or by the 'depositions, answers to
25  interrogatories, and admissions on file' designate 'specific facts showing that there
26  is a genuine issue for trial.' " <u>Celotex</u>, 477 U.S. at 324. If the non-moving party fails
27  to make a sufficient showing of an element of its case, the moving party is entitled

28

[11cv2152-GPC(KSC)]

1  to judgment as a matter of law. Id. at 325. "Where the record taken as a whole could

2  not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine

3  issue for trial.' " Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

4  587 (1986). In making this determination, the court must "view[] the evidence in the

5  light most favorable to the nonmoving party." Fontana v. Haskin, 262 F.3d 871, 876

6  (9th Cir. 2001). The Court does not engage in credibility determinations, weighing

7  of evidence, or drawing of legitimate inferences from the facts; these functions are

8  for the trier of fact. Anderson, 477 U.S. at 255.

9  **II.    Analysis**

10      Defendant RAI moves for summary judgment on the following grounds: (1)

11  Plaintiff qualified for the professional exemption under the Fair Labor Standards

12  Act and the California Labor Code and thus was not entitled to overtime pay under

13  either federal or state wage and hour laws; (2) Plaintiff's Unfair Competition Law

14  and inaccurate wage statement claims are derivative of her overtime claims and thus

15  fail as a matter of law; (3) Plaintiff lacks standing to bring suit because her claims

16  belong to her bankruptcy trustee; and (4) Plaintiff's claim for penalties under the

17  California Private Attorney General Act ("PAGA") fails because the PAGA claim is

18  derivative of Plaintiff's other claims and Plaintiff has failed to meet the

19  requirements of Federal Rules of Civil Procedure 23. (Dkt. No. 70-1.)

20      **A.    Standing**

21      The Court first addresses Defendant's argument that Plaintiff lacks standing,

22  in order to determine whether the Court has subject matter jurisdiction to hear

23  Plaintiff's claims.

24      Concurrently with its motion for summary judgment, Defendant has filed a

25  request for judicial notice of the fact that Plaintiff filed for Chapter 7 bankruptcy on

26  March 31, 2009, creating a bankruptcy estate that was not discharged until July 7,

27  2009, as evidenced by two documents: (1) the Chapter 7 Voluntary Petition dated

28

1   March 31, 2009, filed as docket entry 1 in In re Jorge Escobedo & Tanya Lynette

2   Rosenberg, No. 09-04149-JM (Bankr. S.D. Cal.); and (2) the Discharge of Debtor

3   dated July 7, 2009, filed as docket entry 22 in the same case. (Dkt. No. 70-3,

4   Request for Judicial Notice.) A court may take judicial notice of a fact "not subject

5   to reasonable dispute in that it is either (1) generally known within the territorial

6   jurisdiction of the trial court or (2) capable of accurate and ready determination by

7   resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid.

8   201. Judicial notice of court records is routinely accepted. See, e.g., Valerio v. Boise

9   Cascade Corp., 80 F.R.D. 626, 635 n. 1 (N.D. Cal. 1978), aff'd, 645 F. 2d 699 (9th

10  Cir. 1981). Because Plaintiff has not objected to judicial notice, and the court

11  records offered by Defendants are properly subject to judicial notice, the Court

12  hereby GRANTS the request and takes notice of the facts that Plaintiff filed for

13  Chapter 7 bankruptcy on March 31, 2009 and that a bankruptcy estate was created

14  and not discharged until July 7, 2009. See Smith v. Arthur Anderson LLP, 421 F.3d

15  989, 1002 (9th Cir. 2005) ("The property of the [bankruptcy] estate includes all

16  legal or equitable interests of the debtor in property as of the commencement of the

17  [bankruptcy] case, including the debtor's causes of action.")

18      Based on these documents, Defendant argues Plaintiff lacks standing to

19  pursue the present action because she failed to list her claims against RAI in the

20  bankruptcy proceeding and the claims therefore remain property of the bankruptcy

21  trustee. (Dkt. No. 70-1 at 19-20) (citing Seneca v. First Franklin Fin. Corp., No. 10-

22  cv-2329 DMS (WVG), 2011 WL 3235647 at *2 (S.D. Cal. July 28, 2011) ("Where a

23  claim is asserted in a lawsuit is the property of the bankruptcy estate, the Chapter 7

24  trustee is the real person in interest under the Bankruptcy Code and is the proper

25  party to the suit.")).

26      In opposition, Plaintiff argues that she continued to work for RAI after the

27  bankruptcy action was discharged, until September 3, 2010. (Dkt. No. 75 at 5, 23-

28

24.) Plaintiff argues she has "standing to pursue each claim asserted here from the date the bankruptcy was discharged until she voluntarily resigned from Defendant on September 3, 2010." (Id. at 24.)

Defendant has interpreted Plaintiff's arguments as a concession that Plaintiff lacks standing to pursue claims predating her bankruptcy discharge on July 9, 2009. (Dkt. No. 78 at 9.) Defendant argues that, to the extent Plaintiff's claims withstand summary judgment, Plaintiff's claims must be limited to the period between July 9, 2009 and the termination of Plaintiff's employment with RAI on September 3, 2010. (Id. at 10.) The Court agrees, and GRANTS Defendant's motion for summary judgment as to Plaintiff's claims against RAI which accrued prior to July 9, 2009.

**B.      Fair Labor Standards Act Claim**

Plaintiff's First Amended Complaint ("FAC") seeks recovery for unpaid overtime, due to her alleged misclassification by RAI as an "exempt" employee under the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and the California Labor Code sections 510, 1194, and 1198. (Dkt. No. 14, FAC) (second and fourth causes of action). Defendant moves for summary judgment on both the state and federal statutory "withheld overtime" claims on the ground that RAI has established the affirmative defense that Plaintiff fell within the "professional exemption" to both the FLSA and the California Labor Code. Because the requirements for the exemptions differ in some respects, the Court will address the federal and state overtime claims separately.

The FLSA provides that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). However, the FLSA expressly exempts from this requirement "any employee employed in a bona fide executive, administrative, or professional

[11cv2152-GPC(KSC)]

1   capacity." 29 U.S.C. § 213(a)(1). Because the FLSA is a remedial act, courts
2   narrowly construe the FLSA exemptions. See Martin v. Malcom Pirnie, Inc., 949
3   F.2d 611, 614 (2d Cir. 1991) ("Indeed, an employer bears the burden of proving that
4   its employees fall within an exempted category of the Act."); see also Davis v. J.P.
5   Morgan Chase & Co., 587 F.3d 529, 531 (2d Cir. 2009) ("Exemptions from the
6   FLSA's requirements 'are to be narrowly construed against the employers seeking
7   to assert them and their application limited to those establishments plainly and
8   unmistakably within their terms and spirit.' ") (quoting Arnold v. Ben Kanowsky,
9   Inc., 361 U.S. 388 (1960)).

10       The Department of Labor defines a "professional" employee as one: (1) who
11  is paid on a salary or fee basis at a rate not less than $455 per week; and (2) whose
12  "primary duty" is the performance of work requiring advanced knowledge in a field
13  of science or learning customarily acquired by a prolonged course of specialized
14  intellectual instruction. 29 C.F.R. § 541.300-301(a). Defendant has introduced
15  uncontroverted evidence that Plaintiff was paid on a salary basis of not less than
16  $455 per week throughout the relevant period. (Dkt. No. 70-4, Palmer Decl. ¶ 20.)
17  However, the parties dispute whether Plaintiff satisfies the three-prong "duties" test
18  of the "primary duty" requirement. This test requires that: (1) the employee must
19  perform work requiring advanced knowledge; (2) the advanced knowledge must be
20  in a field of science or learning; and (3) the advanced knowledge must be
21  customarily acquired by a prolonged course of specialized intellectual instruction.
22  29 C.F.R. § 541.301(a).

23       **1.   Work requiring advanced knowledge**

24       Under the first element of the "primary duty" test, Defendant bears the burden
25  of proving that Plaintiff's primary duty as a Registered Dietitian for RAI was "work
26  requiring advanced knowledge." "Primary duty" under the FLSA means the
27  "principal, main, major or most important duty that the employee performs." 29

28

C.F.R. § 541.700. "Work requiring advanced knowledge" is defined by regulation as "work which is predominantly intellectual in character, and which includes work requiring the consistent exercise of discretion and judgment, as distinguished from performance of routine mental, manual, mechanical or physical work." 29 C.F.R. § 541.301(b). The regulations further provide that "[a]n employee who performs work requiring advanced knowledge generally uses the advanced knowledge to analyze, interpret, or make deductions from varying facts or circumstances." (Id.)

Although Plaintiff testified that the RAI Registered Dietitian job description generally provided an accurate breakdown of her responsibilities at RAI,[3] (Dkt. No. 70-5, Stern Decl. Ex. A at 196:4-25, 197:1-25), the parties dispute the amount of discretion and judgment Plaintiff exercised in the performance of these duties. As described above, the RAI Registered Dietitian job description provides that approximately 85% of Plaintiff's job duties consisted of four main responsibilities: providing patient education (25%); assessing patients' nutritional statuses (25%); ongoing monitoring of patients (20%); and the creation of dietary plans for each patient (15%). In regard to Plaintiff's assessments of patients' nutritional status, Defendant argues Plaintiff was "responsible for the nutritional assessment portion" of the standard assessments, requiring Plaintiff to evaluate patients' "appetite, oral intake, . . . [and] adherence to previous diets," among other dietary considerations.

---

[3]The Court notes that Plaintiff claims that the RAI job description is "irrelevant" and that "Defendant is estopped from relying on the job description" because of this Court's prior holding that the "job description does not provide the necessary proof to show the RDs did or did not use independent judgment." (Dkt. No. 75-2, Pl. Sep. Statement of Disputed Facts ¶¶ 17-18) (citing Rosenberg v. Renal Advantage, Inc., No. 11-cv-2152-GPC-JMA, 2013 WL 3205426 (S.D. Cal. June 24, 2013)). The Court disagrees. In its June 24, 2013 Order denying class certification, the Court did not hold that the job description was irrelevant to Plaintiff's claims; the Court's holding was that the job description could not, on its own, provide sufficient common evidence among putative class members without an individualized inquiry into whether the job description reflected the actual work performed by each employee. (Dkt. No. 66 at 13.) As Plaintiff testified that RAI's Registered Dietitian job description generally provided an accurate breakdown of her responsibilities at RAI, and Plaintiff has introduced no evidence to the contrary, the Court will consider the job description as well as Plaintiff's testimony that the job description is generally reflective of her job duties.

1   (Dkt. No. 78-1 at ¶ 36.) As to Plaintiff's ongoing monitoring duties, Defendant

2   argues Plaintiff "relied on monthly lab results and discussions with her patients to

3   assess her patients' overall nutrition, diabetes management, and mineral

4   metabolism, and could provide individualized comments related to each." (Id. ¶ 45.)

5   Furthermore, as to the creation of dietary plans, Defendant argues Plaintiff "worked

6   alone and unassisted in devising her patients' dietary plans, by reviewing their

7   monthly lab results and relating those results to the patients' diets, medications, and

8   dialysis treatments." (Dkt. No. 70-1 at 13.) According to Defendant, Plaintiff was

9   "not required to obtain supervisory approval before devising dietary plans and

10  reviewing them with her patients," and instead based her nutrition counseling on her

11  "training, knowledge, and skills." (Id.) The Court finds that Defendant's proffered

12  evidence shows significant independent judgment and discretion in the performance

13  of her duties at RAI.

14      Plaintiff characterizes Plaintiff's former responsibilities differently, arguing

15  that physician oversight, state statute, and RAI policies and procedures constrained

16  Plaintiff's discretion and judgment in the performance of her job duties as a

17  Registered Dietitian. (Dkt. No. 75 at 13-21.) For the following reasons, the Court

18  disagrees that any of the three constraints set forth by Plaintiff create a dispute of

19  material fact as to whether Plaintiff performed work that required advanced

20  knowledge under the FLSA.

21      Plaintiff's first argument is that she has produced evidence demonstrating the

22  existence of material facts as to whether her duties "were, in fact, subordinate to

23  those of the physician." (Id. at 19) (citing Dkt. No. 75-1, Bhowmik Decl. Exs. 8, 21,

24  22). This argument rests on the deposition testimony of Plaintiff and two other RAI

25  Registered Dietitians, stating that physicians at RAI would write their own initial

26  diet orders; that physicians had to approve the ordering of medication for a patient;

27  and that physicians had to approve diet plans before they became effective. (Id.) At

28  most, this cited testimony indicates that RAI doctors held responsibility over

1  writing diet orders, ordering medication, and approving diet plans. While the

2  creation of diet plans constituted approximately 15% of Plaintiff's job

3  responsibilities as a Registered Dietitian, the ordering of medication and writing of

4  diet orders are not mentioned in the RAI Registered Dietitian job description.

5  Although Plaintiff's cited deposition testimony indicates some physician oversight

6  for Registered Dietitians at RAI, the testimony fails to raise a triable issue of fact as

7  to whether Plaintiff's primary duties at RAI required her to exercise independent

8  judgment. See, e.g., Rieve v. Coventry Health Care, Inc., 870 F. Supp. 2d 856, 864

9  (C.D. Cal. 2012) (finding that the plaintiff met the "advanced knowledge" prong of

10  the primary duties test because "even though [p]laintiff existed in a hierarchy, she

11  was clearly still required to exercise independent judgment and discretion in the

12  course of her duties.").

13       Second, Plaintiff argues that her exercise of independent judgment was

14  necessarily constrained by California statute. (Dkt. No. 75 at 13) (citing Cal. Bus. &

15  Prof. Code § 2586(a) (registered dietitians cannot provide nutritional and dietary

16  counseling, conduct nutritional and dietary assessments, and develop nutritional and

17  dietary treatments "unless a referring physician and surgeon has established or

18  approved a written protocol governing the patient's treatment.")). The Court again

19  rejects this argument. As the Court previously held, section 2586 authorizes

20  Registered Dietitians in California to "develop nutritional and dietary treatments"

21  that will meet the "desired objectives" of the referring health care provider and

22  therefore does not limit the autonomy of Registered Dietitians or prevent the

23  exercise of independent judgment, as a matter of law. (See Dkt. No. 66, Ord.

24  Denying Mtn. to Certify Class at 11.) Furthermore, Plaintiff has failed to introduce

25  evidence that the daily performance of her job duties was in fact constrained by

26  section 2586. Accordingly, the Court finds that no triable issues of fact exist on the

27  question of whether section 2586 constrained Plaintiff's exercise of independent

28  judgment and that Plaintiff's argument based on this statute fails as a matter of law.

[11cv2152-GPC(KSC)]

1    Third, Plaintiff argues that RAI's "computer based monitoring programs

2  pursuant to pre-established outcome standards" raise a triable issue of fact as to

3  whether Plaintiff exercised independent judgment as a Registered Dietitian. (Dkt.

4  No. 75 at 18) (citing Dkt. No. 75-1, Bhowmik Decl. Ex. 1 at 135:24-136:16; 139:4-

5  139:23; 148:16-149:22; 168:17-169:16; Bhowmik Decl. Ex. 10.) Plaintiff cites, as

6  support for this contention, excerpts from the deposition of Ms. Christie Charlisle,

7  RAI Vice President of Human Resources, in which Ms. Charlisle testified that: (1)

8  RAI utilizes computer based monitoring programs to store and track patient data;

9  and (2) RAI has established outcome standards for patients, setting internal

10 guidelines such as target patient potassium levels. (Id.) Plaintiff argues this

11 evidence shows she lacked authority to make independent judgments in the course

12 of her duties, as did the plaintiffs who successfully defeated summary judgment in

13 Hendricks v. J.P. Morgan Chase Bank, N.A., 677 F. Supp. 2d 544, 553 (D. Conn.

14 2009). (Dkt. No. 75 at 18.)

15    The Court finds that Plaintiff's proffered evidence of either computer based

16 monitoring programs or outcome standards fails to raise a triable issue of fact as to

17 whether Plaintiff exercised independent judgment as a Registered Dietitian for RAI.

18 Hendricks involved two uncertified accountants who utilized "day-to-day

19 checklists" which "guide[d] [them] in completing [their] daily tasks." 677 F. Supp.

20 2d at 553-54. The plaintiffs in that case introduced evidence that "Hendricks's

21 supervisors delegated him assignments, reviewed his work, and prepared his

22 performance reviews." Id. Similarly, plaintiff Minzie testified "that he was 'micro-

23 managed' by certain supervisors," and that "his ability to produce financial

24 statements depended only on his ability to operate accounting software, rather than

25 knowledge of accounting principles." Id. at 554. With this evidence, the court found

26 that there were questions of fact as to whether the plaintiffs primarily performed

27 work requiring advanced knowledge. Id.

28

[11cv2152-GPC(KSC)]

1    Here, Plaintiff's evidence that RAI utilizes a computerized monitoring
2  program falls far short of evidence of "day-to-day checklists." In fact, Plaintiff does
3  not dispute that she provided "individualized comments related to her assessment of
4  her patients' overall nutrition, diabetes management, and mineral metabolism" when
5  completing ongoing monitoring notes using RAI's computerized program. (Dkt. No.
6  78-1 at ¶ 46.) Likewise, while RAI may have set outcome standards for patients,
7  Plaintiff does not dispute that when she observed deficient mineral bone disease,
8  potassium, albumin, or other outcomes, Plaintiff would counsel patients on how to
9  correct the deficiencies through diet corrections. (Id. at ¶ 48-51.) These admissions
10  show Plaintiff's significant exercise of discretion and judgment as a Registered
11  Dietitian despite the use of either a computerized monitoring program or RAI
12  outcome standards. Accordingly, the Court finds that Plaintiff has failed to raise a
13  triable issue of material fact as to whether her work at RAI "required advanced
14  knowledge" as set forth in FLSA regulations, and finds that her work did require
15  advanced knowledge as a matter of law.

16              **2.    Advanced knowledge customarily acquired by specialized**
17                         **intellectual instruction**

18      To warrant summary judgment on Plaintiff's FLSA claim due to the federal
19  professional exemption, Defendant must also demonstrate that Plaintiff's Registered
20  Dietitian job responsibilities required "advanced knowledge in a field of science or
21  learning" that is "customarily acquired by specialized intellectual instruction." 29
22  C.F.R. § 541.301(a). Plaintiff argues the Registered Dietitian position does not meet
23  this criterion because the learned professional exemption "does not apply to
24  occupations in which most employees have acquired their skill by experience rather
25  than by advanced specialized instruction." (Dkt. No. 75 at 16) (citing 29 C.F.R. §
26  541.301(d)).

27      Specifically, Plaintiff claims that Defendant's hiring practices exhibit a
28  preference for candidates who have gained the knowledge necessary to complete

1   Registered Dietitian duties via experience rather than academic training. (Dkt. No.

2   75 at 16) (citing Dkt. No. 75-1, Bhowmik Decl. Ex. 7, Registered Dietitian Job

3   Description[4] ("Minimum of two years experience in clinical dietetics and/or

4   nutrition, renal preferred.")). Plaintiff argues that, like the plaintiff in <u>Cook v.</u>

5   <u>Carestar, Inc.</u>, No. 2:11-cv-00691, 2013 WL 5477148 (S.D. Ohio Sept. 16, 2013),

6   she obtained the knowledge required to perform the Registered Dietitian job

7   primarily from training and on-the-job experience, rather than from the education

8   she obtained to qualify for the position. (Dkt. No. 75 at 16.) The Court finds <u>Cook</u>

9   distinguishable from the facts of this case. In <u>Cook</u>, the district court considered

10  whether a "Case Manager" position, which required <u>either</u> training in nursing <u>or</u>

11  social work, met the "advanced knowledge . . . acquired by a prolonged course of

12  specialized intellectual instruction" test, given that the defendant's training

13  requirement did not "require a specific level of academic achievement (e.g.

14  associate's degree, bachelor's degree, etc.) in a specific discipline." 2013 WL

15  5477148 at *7. Although the court found that this dual educational track for

16  qualification raised a genuine dispute of material fact, the court found "no question

17  [that] each such type of licensure requires its own prolonged course of specialized

18  intellectual study: Plaintiffs do not dispute that nursing and social work are 'fields

19  of science or learning.' " <u>Id.</u> at *8. Thus, the factual dispute in <u>Cook</u> arose only

20  because either of two separate educational tracks qualified the plaintiffs for the Case

21  Manager positions at issue in that case. No such facts exist here.

22       Furthermore, Plaintiff's argument is expressly foreclosed by federal

23  regulation: the FLSA regulations provide that the word "customarily" means "that

24  the [professional] exemption is also available to employees in such professions who

25  have substantially the same knowledge level and perform substantially the same

26  work as the degreed employees, but who attained the advanced knowledge through

27  _____

28       [4]As noted previously, the parties provide different versions of the RAI job
     description. Nonetheless, the Court finds the discrepancy immaterial.

1   a combination of work experience and intellectual instruction." 29 C.F.R. §
2   541.301(d). Thus, the regulations expressly contemplate that an employee may
3   acquire the requisite "advanced knowledge" via a combination of sources. Because
4   Plaintiff does not dispute that her Registered Dietitian position required a Bachelors
5   degree in nutrition or dietetics, registered status with the American Dietetic
6   Association, and experience in clinical dietetics, the Court finds no genuine issues
7   of material fact as to whether RAI's Registered Dietitian position meets the FLSA's
8   "professional exemption" requirements, and finds that Plaintiff was exempt from the
9   FLSA's overtime provisions as a matter of law. Accordingly, the Court GRANTS
10  Defendant's motion for summary judgment on Plaintiff's FLSA claim seeking
11  unpaid overtime wages.

12              **C.      California Labor Code Overtime Claim**

13          Under California law, employees must be compensated with overtime pay for
14  any work in excess of eight hours per day or in excess of forty hours in one week.
15  Cal. Lab. Code § 510. California Labor Code section 515 provides that the
16  Industrial Welfare Commission ("IWC") may establish exemptions from section
17  510' s overtime compensation requirement. Pursuant to section 515, the IWC has
18  promulgated exemptions for professional and administrative employees. See
19  California Wage Order 4–2001, codified as 8 Cal. Code Regs. § 11040. Defendant
20  moves for summary judgment on Plaintiff's California law overtime claim, arguing
21  that Plaintiff was properly classified as a "professional" employee exempt from
22  California overtime laws. (Dkt. No. 70-1 at 15.)

23          Under the IWC wage order, employees qualify for the "professional
24  exemption" if they are: (1) primarily engaged in a "learned or artistic profession";
25  (2) customarily and regularly exercise discretion and independent judgment in the
26  performance of their duties; and (3) earn a monthly salary equivalent of no less than
27  two times the state minimum wage for full-time employment. 8 Cal. Code Regs. §
28  11040(1)(A)(3)(b)-(d). The wage order further provides that the "learned or artistic

1    profession" criterion is "intended to be construed in accordance with" federal

2    regulations concerning the professional exemption to the FLSA. Id. §

3    11040(1)(A)(3)(e).

4         For the most part, Plaintiff raises the same arguments against application of

5    the California professional exemption addressed above in relation to the FLSA

6    professional exemption: that the Registered Dietitian position does not require

7    advanced knowledge in a field of science or learning; that Plaintiff's primary duty

8    was not predominantly intellectual in character; and that Plaintiff's primary duty did

9    not involve the consistent exercise of discretion and judgment. (Dkt. No. 75 at 16-

10   19.) For the foregoing reasons detailed above, and because the California

11   professional exemption is "construed in accordance with" federal regulations, 8 Cal.

12   Code Regs. § 11040(1)(A)(3)(e), the Court disagrees that triable issues of fact exist

13   on the question of whether Plaintiff's position qualified as a "learned or artistic

14   profession" exempt from California Labor Code overtime provisions.

15        However, Plaintiff raises one additional argument applicable only to the

16   California professional exemption that warrants further discussion. (Dkt. No. 75 at

17   13-16.) Marking a departure from federal regulations, the IWC has made an explicit

18   policy choice to exclude "registered nurses employed to engage in the practice of

19   nursing" from the scope of the California professional exemption. 8 Cal. Code

20   Regs. § 11040(1)(A)(3)(f); see Rieve v. Coventry Health Care, Inc., 870 F. Supp. 2d

21   856, 867 (C.D. Cal. 2012) ("Section 1(A)(3)(f) is . . . probative of a significant

22   policy distinction between the FLSA professional exemption and the California

23   professional exemption. Registered nurses are generally considered professionals

24   exempt from FLSA coverage, but are not typically exempt from California state law

25   overtime coverage.") (internal citations omitted). Recognizing this policy

26   distinction between the California and federal professional exemptions, the court in

27

28

[11cv2152-GPC(KSC)]

1   Rieve[5] found that triable issues of fact existed as to whether the plaintiff in that

2   case, a Registered Nurse employed as a "Field Case Manager," fell within the

3   California professional exemption despite the court's concurrent finding that the

4   plaintiff did not fall within the federal professional exemption as a matter of law.

5   870 F. Supp. 2d at 861-69. Plaintiff argues that her work was "even more restricted"

6   than a registered nurse or the Field Case Manager in Rieve, and that "Plaintiff

7   should be afforded the same protections under California law for the same reasons

8   that these protections are extended to registered nurses and field case managers."

9   (Dkt. No. 75 at 15.)

10          The Court disagrees. The full text of the IWC exclusion of registered nurses

11   from the California professional exemption reads as follows:

12          (f) Notwithstanding the provisions of this subparagraph [detailing the
             professional exemption], pharmacists employed to engage in the
13          practice of pharmacy, and registered nurses employed to engage in the
             practice of nursing, shall not be considered exempt professional
14          employees, nor shall they be considered exempt from coverage for the
             purposes of this subparagraph unless they individually meet the criteria
15          established for exemption as executive or administrative employees.

16   8 Cal. Code Regs. § 11040(1)(A)(3)(f). Under the plain language of this exclusion,

17   the IWC intended only pharmacists and registered nurses to fall outside the ambit of

18   the California professional exemption. See Chevron U.S.A. Inc. v. Echazabal, 536

19   U.S. 73, 80 (discussing the interpretive canon expressio unis est exclusio alterius,

20   "expressing one item of [an] associated group or series excludes another left

21   unmentioned."). To extend the Rieve court's application of section

22   11040(1)(A)(3)(f) to the Registered Dietitian Plaintiff in this case would open the

23   doors to application of this narrow exclusion to a variety of medical professions

24   similar to but distinct from registered nurses.

25          In addition, the Court finds that two portions of the wage order, in particular,

26   support the Court's conclusion that the IWC intended narrow rather than broad

27

28          [5]Plaintiff's counsel in Rieve also represents Plaintiff Tanya Rosenberg in this
     case.

1  construction of the section 11040(1)(A)(3)(f) exclusion for Registered Nurses and

2  Pharmacists. First, the wage order states not only that registered nurses are excluded

3  from the professional exemption, but that "registered nurses employed to engage in

4  the practice of nursing" are excluded from the exemption. 8 Cal. Code Regs. §

5  11040(1)(A)(3)(f). Despite the <u>Rieve</u> court's holding to the contrary, the plain

6  language of section 11040(1)(A)(3)(f) therefore indicates that the IWC intended the

7  section to apply not just to registered nurses, but to registered nurses employed in a

8  particular type of job. Second, the section of the wage order immediately following

9  the 11040(1)(A)(3)(f) exclusion supports narrow construction of the registered

10  nurse exclusion. Section 11040(1)(A)(3)(g) provides that section 11040(1)(A)(3)(f)

11  shall not apply to three categories of "advanced practice nurses." 8 Cal. Code Regs.

12  § 11040(1)(A)(3)(g) (stating that the exclusion for registered nurses employed to

13  engage in the practice of nursing "shall not apply" to certified nurse midwives,

14  certified nurse anesthetists, or certified nurse practitioners). The Court finds that the

15  IWC's provision for further exceptions to the exclusion for registered nurses

16  supports the conclusion that the exclusion should be read narrowly to apply only, as

17  the plain language states, to "registered nurses employed to engage in the practice of

18  nursing."

19       As the parties agree that Plaintiff was not employed by RAI as a registered

20  nurse and was not engaged in the practice of nursing, the Court finds that Plaintiff

21  has failed to raise a triable issue of material fact as to the application of the

22  California professional exemption. Accordingly, the Court GRANTS Defendant's

23  motion for summary judgment on Plaintiff's claim that RAI improperly withheld

24  overtime pay in violation of California Labor Code section 510.

25       **D.   Remaining Claims**

26       Plaintiff's remaining causes of action are derivative of her state and federal

27  claims for unlawfully withheld overtime. (Dkt. No. 14.) The causes of action

28  include: Unfair Competition in violation of California Business and Professions

1 Code sections 17200 *et seq.* ("UCL"); failure to provide accurate itemized wage

2 statements in violation of California Labor Code section 226; and violation of the

3 California Private Attorneys General Act, California Labor Code sections 2698 *et*

4 *seq.* (Id.)

5     California's UCL makes unlawful "unfair competition," providing in

6 pertinent part, "[a]s used in this chapter, unfair competition shall mean and include

7 any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code

8 § 17200. California's "UCL borrows violations from other laws, making them

9 independently actionable as unfair practices." Sullivan v. Oracle Corp., 51 Cal. 4th

10 1191 (2011) (citing Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134,

11 1143 (2003)). As pled in the First Amended Complaint, Plaintiff's UCL claim is

12 based on Plaintiff's allegations that Defendant unlawfully misclassified Plaintiff as

13 an "exempt" employee and therefore failed to pay the correct overtime pay or

14 provide accurate itemized wage statements. (Dkt. No. 14 ¶ 42.) Having granted

15 summary judgment to Defendants on Plaintiff's claims that Plaintiff was improperly

16 classified as exempt from federal and state wage and hour laws, the Court

17 accordingly GRANTS Defendant's motion for summary judgment on Plaintiff's

18 derivative UCL claim. See Price v. Starbucks Corp., 192 Cal. App. 4th 1136, 1147

19 (2011) ("Because the underlying causes of action fail, the derivative UCL . . .

20 claim[] also fail[s].").

21     California Labor Code section 226 mandates that an employer "furnish each

22 of his or her employees . . . an accurate itemized statement in writing showing (1)

23 gross wages earned, [and] (2) total hours worked by the employee . . ." Section

24 226(a). Having granted summary judgment to Defendants on Plaintiff's claims that

25 Plaintiff was improperly classified as exempt from federal and state wage and hour

26 laws, the Court finds that Plaintiff has failed to raise a triable issue of material fact

27 as to whether Defendant provided her with accurate itemized statements.

28

[11cv2152-GPC(KSC)]

1  Accordingly, the Court GRANTS Defendant's motion for summary judgment on
2  Plaintiff's derivative section 226 claim.

3       Last, Defendant moves for summary judgment on Plaintiff's claim under the
4  California Private Attorney's General Act ("PAGA"), California Labor Code
5  sections 2698 *et seq.* (Dkt. No. 70-1 at 20.) Under the PAGA statute, an "aggrieved
6  employee" may bring a civil action personally and on behalf of other current or
7  former employees to recover civil penalties for Labor Code violations. Cal. Lab.
8  Code § 2699(a). PAGA thus "authorizes a representative action only for the purpose
9  of seeking statutory penalties for Labor Code violations." Arias v. Superior Court,
10  46 Cal. 4th 969, 986 (2009) (citing Cal. Lab. Code § 2699(a), (g)). Having granted
11  summary judgment to Defendants on Plaintiff's claims that Plaintiff was improperly
12  classified as exempt from the California Labor Code wage and hour laws, the Court
13  accordingly GRANTS Defendant's motion for summary judgment on Plaintiff's
14  derivative PAGA claim. See Price, 192 Cal. App. 4th at 1147 (2011) ("Because the
15  underlying causes of action fail, the derivative . . . PAGA claim[] also fail[s].").

16                           **CONCLUSION AND ORDER**

17       Based on the foregoing, the Court hereby **GRANTS** Defendant RAI's
18  Request for Judicial Notice (Dkt. No. 70-3) and **GRANTS** Defendant RAI's motion
19  for summary judgment on all causes of action alleged against RAI in Plaintiff's First
20  Amended Complaint. (Dkt. No. 70.) The motion hearing set for April 25, 2014 is
21  hereby **VACATED**. The Clerk of Court shall enter judgment in favor of Defendant
22  Renal Advantage, Inc.

23       **IT IS SO ORDERED.**
24  DATED:  April 24, 2014

25
26                                    HON. GONZALO P. CURIEL
                                     United States District Judge
27
28

[11cv2152-GPC(KSC)]

**EXHIBIT #2**

1   BLUMENTHAL, NORDREHAUG & BHOWMIK
      Norman B. Blumenthal (State Bar #068687)
2    Kyle R. Nordrehaug (State Bar #205975)
      Aparajit Bhowmik (State Bar #248066)
3   2255 Calle Clara
    La Jolla, CA 92037
4   Telephone: (858)551-1223
    Facsimile: (858) 551-1232
5   Firmsite: www.bamlawca.com

6   Attorneys for Plaintiff / Appellant

7

8

9

10

11                 UNITED STATES COURT OF APPEALS

12                        FOR THE NINTH CIRCUIT

13

14  TANYA ROSENBERG, an individual,        Case No. _____
    on behalf of herself, and all persons
15  similarly situated,
                                           **REPRESENTATION STATEMENT**
16              Plaintiff / Appellant,

17  v.                                     D.C. # **11-cv-02152-GPC-KSC**

18  RENAL ADVANTAGE, INC., a
    Delaware Corporation; and DOES 1
19  through 50, inclusive,

20              Defendants / Appellees.

21

22

23

24

25         The undersigned represents Plaintiff / Appellant Tanya Rosenberg, appellant in

26  this matter and no other party.  Listed below is a service list that shows all of the

27  parties to the action below, and identifies their counsel by name, firm, address, and

28  _____
                                        1
                          REPRESENTATION STATEMENT

1 | telephone number, where appropriate (F.R.A.P. 12(b); Circuit Rule 3-2(b).)

2

3 | Dated: May 14, 2014                    BLUMENTHAL, NORDREHAUG & BHOWMIK

4 |                                        By:___*/s/ Norman B. Blumenthal*_____
5 |                                              Norman B. Blumenthal, Esq.
                                                 2255 Calle Clara
6 |                                              La Jolla, CA 92037
                                                 (858) 551-1223
7 |                                              Fax: (858) 551-1232
                                                 Email: Norm@bamlawca.com

8 | **SERVICE LIST:**

9

10 | DAVID H. STERN (SBN 196408)
     E-mail: sternd@hugheshubbard.com
11 | ALEX E. SPJUTE (SBN 229796)
     E-mail: spjute@hugheshubbard.com
12 | CAROLIN SAHIMI (SBN 260312)
     E-mail: sahimi@hugheshubbard.com
13 | HUGHES HUBBARD & REED LLP
     350 S. Grand Avenue, 36th Floor
14 | Los Angeles, CA 90071
     Telephone: (213) 613-2800
15 | Facsimile: (213) 613-2950

16 | *Attorneys for Defendant / Appellee*
     *RENAL ADVANTAGE, INC.*

17

18 | NORMAN B. BLUMENTHAL, Esq.,  State Bar No. 068687
     norm@bamlawca.com
19 | KYLE R. NORDREHAUG, Esq.,  State Bar No. 205975
     kyle@bamlawca.com
20 | BLUMENTHAL, NORDREHAUG & BHOWMIK
     2255 Calle Clara
21 | La Jolla, CA 92037
     Telephone: (858)551-1223
22 | Facsimile: (858) 551-1232
     *Attorneys for Plaintiff/Appellant Tanya Rosenberg*

23

24

25

26

27

28 |
2
REPRESENTATION STATEMENT